UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

RICKEY BROWN                                                                                          PLAINTIFF
Reg #27002-510

V.                              Case No. 4:23-CV-00470-KGB-BBM

ABSALOM TILLEY, Dr., Pulaski County
Detention Facility, Turn Key Medical;
LAUREN MESSERSMITH, Care Provider,
Pulaski County Detention Facility, Turn Key
Medical; and TURN KEY HEALTH CLINICS, LLC                                   DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to Chief United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommended Disposition. If you do not file objections, Chief Judge Baker may adopt this Recommended Disposition without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I.     INTRODUCTION

On May 22, 2023, Plaintiff Rickey Brown ("Brown"), an inmate in the Pulaski County Regional Detention Facility ("PCRDF"), filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983. (Doc. 2). In his Complaint, Brown alleges that Defendants Dr. Absalom Tilley ("Dr. Tilley") and Lauren Messersmith ("Messersmith") violated his constitutional

rights by denying him adequate medical treatment for a hernia. *Id.* at 4–5. Specifically, Brown alleges:

> I was scheduled for a [consultation] for a hernia surgery in 10-22 the same day I was in court & detained. I have seen medical almost every week [since] I have been here. Dr. [Tilley] & Mrs. Messersmith have told me I need surgery. I was sent to UAMS hospital on 2-5-23 because my [hernia] has gotten worse. I was scheduled for a double hernia surgery on 2-5-23 at UAMS for the following week and was not taken[.] It is now 5-15-23[.] I still have not been taken for my surgery. . . . My sick calls are even being answered no because they say there is nothing else the[y] can do until I get surgery I am constantly in pain & sick.

*Id.* Brown also sued Turn Key Health Clinics, LLC ("Turn Key") as the employer of Dr. Tilley and Messersmith. *Id.* at 2. After the Court screened Brown's Complaint in accordance with the Prison Litigation Reform Act ("PLRA"), Brown was allowed to proceed with deliberate-indifference claims against all Defendants. (Doc. 5 at 1).

On February 2, 2024, Defendants filed a Joint Motion for Summary Judgment, a Brief in Support, and a Statement of Facts (Doc. 31–33). In their Motion, Defendants allege that Brown failed to exhaust administrative remedies pursuant to the PLRA. On February 20, 2024, Brown filed a Response to Defendants' Motion for Summary Judgment, a Motion for Appointment of Counsel, and a Statement of Facts. (Docs. 35–36). Defendants did not file a reply, and the time for doing so has passed. LOCAL RULE 5.5(c). Thus, the issue of exhaustion is ready for disposition.

After careful consideration of the record, the Court recommends that Defendants' Joint Motion for Summary Judgment be granted and Brown's Complaint be dismissed, without prejudice, for failure to exhaust administrative remedies.

II.  DISCUSSION

    A.  The PLRA's Exhaustion Requirement

The PLRA requires prisoners to exhaust all available administrative remedies prior to filing a § 1983 action. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019). In order to do so, prisoners must fully and properly exhaust their available administrative remedies *as to each claim* that is later raised in a § 1983 action and complete the exhaustion process *before* initiating the § 1983 action. *Jones v. Bock*, 549 U.S. 199, 211, 219–20, 223–24 (2007); *Woodford*, 548 U.S. at 93–95; *Burns v. Eaton*, 752 F.3d 1136, 1141–42 (8th Cir. 2014); *Johnson v. Jones*, 340 F.3d 624, 626–28 (8th Cir. 2003) ("Under the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court. . . . If exhaustion was not completed at the time of filing, dismissal is mandatory.") (emphasis in original). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90.

In *Booth v. Churner*, the United States Supreme Court made clear that the Prison Litigation Reform Act requires inmates to complete *all levels* of the administrative process prior to filing a lawsuit, even if the process does not permit an award of money damages. 532 U.S. 731, 739 (2001) (emphasis added). Thus, to satisfy the PLRA, a prisoner must comply with the exhaustion requirements of the incarcerating facility and complete *all levels* of the administrative process before he can properly bring a claim in a § 1983 action.

### B.     PCRDF Grievance Procedure

The PCRDF has a grievance procedure in place to permit inmates to file grievances and appeals and to assure them of written responses from facility officials in a timely and orderly manner without fear of reprisal or prejudice. (Doc. 31-2). Any inmate may invoke the grievance procedure "regardless of his security or job classification, disciplinary status, or administrative or legislative decisions affecting the inmate." *Id.* at 3. An inmate initiates the grievance process by submitting a written complaint regarding one of the following:

   a. Actions taken by staff or other inmates that have the effect of depriving the inmate of a right, service, or privilege.

   b. Allegations of abuse, neglect, or mistreatment by staff or other inmates.

   c. Any other matter the inmate believes to be illegal, a violation of department rules and regulations, or unconstitutional treatment or condition.

*Id.* at 1–2. Grievances must be filed within 15 days after the grievance occurrence with the Grievance Officer or designee. *Id.* at 4. The problem named in the grievance "should be stated as briefly and clearly as possible." *Id.* If, after being responded to by the Grievance Officer or designee, *the inmate is not satisfied*, he or she "may appeal to the Chief of Detention within ten working days." *Id.* at 7.

After an inmate appeals, the Chief of Detention or a designee will respond to the appeal within five working days. (Doc. 31-2 at 7). This is the "final level of the appeal process." *Id.* The entire grievance process must be completed within 30 working days unless a valid extension has been agreed upon or unforeseen circumstances have occurred.

4

*Id.* at 8. Therefore, to pursue his deliberate-indifference claims against Defendants before this Court, Brown was required to raise this claim in a grievance, if available, and appeal through all levels of review.[1]

### C. Defendants' Motion for Summary Judgment[2]

In their Motion and supporting brief, Defendants argue that Brown's claims against Defendants should be dismissed because Brown failed to appeal any grievance related to the claims in this case. (Doc. 31 at 2; Doc. 33 at 5–6). Resultantly, Defendants contend that Brown failed to exhaust his administrative remedies as to his deliberate-indifference claims against Defendants.

In support of their Motion, Defendants attach the Declaration of the PCRDF Records Custodian, Sergeant James Hill ("Hill"). (Doc. 31-3). According to Hill, prior to

---

[1] While the appeal language is arguably ambiguous—an inmate "may" appeal if they are unsatisfied with the response—language later in the policy instructs that the appeal "is the final level of the appeal process." (Doc. 31-2 at 7). Other district courts addressing the PCRDF grievance policy agree—to exhaust and thereby comply with the PLRA, inmates must appeal adverse responses to their grievances. *See Warren v. Hoilday*, No. 4:18-CV-00248-KGB-JTK, 2019 WL 4621647, at *3 (E.D. Ark. Aug. 29, 2019) (holding PCRDF inmate failed to exhaust administrative remedies because he did not appeal any of the responses to his relevant grievances, which is required to complete all steps of the grievance process), *report and recommendation adopted sub nom. Warren v. Holiday*, No. 4:18-CV-00248-KGB-JTK, 2019 WL 4621899 (E.D. Ark. Sept. 23, 2019); *Gallardo v. Lemmons*, No. 4:23-CV-00468-JM-PSH, 2023 WL 6847694, at *4 (E.D. Ark. Oct. 17, 2023) (same), *report and recommendation adopted*, 2023 WL 7350073 (E.D. Ark. Nov. 7, 2023); *Engstrom v. Holladay*, No. 4:16-CV-00588-BSM-JJV, 2017 WL 1393713, at *3 (E.D. Ark. Feb. 14, 2017) (same), *report and recommendation adopted*, 2017 WL 1398327 (E.D. Ark. Apr. 14, 2017).

[2] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* FED R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

filing this lawsuit, "[p]laintiff did not appeal any of his grievances which relate to the provision of medical care." *Id.* at ¶ 8.

### D. Brown's Response to Defendants' Motion

In his Response, Brown does not dispute Hill's assertion regarding his grievances. (Doc. 35). Instead, Brown argues:

> I am being held that the CCA in Tutwiler Mississippi and do not have access to the copies, but [PCRDF] will have copies of the many requests, sick calls, and grievances that I filed while I was incarcerated there between the time of Oct. 2022 and August of 2023. I had copies of all grievances and requests but I wasn't allowed to bring them with me when I was shipped out of Green Co., A[R]. I need the help of a licensed attorney[.] I do not know the ways and procedures of the law.

*Id.* at 1. Additionally, in Brown's Statement of Facts, Brown claims:

> After putting in many sick calls and grievances[,] I was taken to U.A.M.S. hospital in Little Rock, AR and examined for a hernia and was informed there that I had a [] double hernia and the only thing that could be done for it was surgery[.] I was sent back to [PCRDF] and my surgery was scheduled for the following week. [That] was on or about February 5, 2023[.] I was never taken back for my surgery. I need the help of a licensed attorney[.] I do not know or understand the ways and procedures of the law.

(Doc. 36 at 1). Below, the Court discusses each relevant grievance in turn.

### E. Relevant Grievances

Brown submitted numerous grievances prior to filing this lawsuit.[3] (Doc. 31-1). Only a few of those grievances relate to the deliberate-indifference claims at issue in this case: 30212251, 30293518, 30322375, 31058162, 31099428, and 31262193.[4] *Id.* at 12, 16–17, 101, 105, 126.

In Grievance 30212251, filed on December 10, 2022, Brown grieved the following:

> I have put in several medical request[s] and seen medical 3 times and they keep giving me [ibuprofen] and tylenol but [I] need surgery [I] was [scheduled] for surgery for a hernia the dr. . . . says [I]'m going to have to have double hernia surgery so it is getting worse and its making me sick[.]

---

[3] On June 3, 2023, after he initiated this lawsuit, Brown filed a grievance related to his surgery. (Doc. 31-1 at 170). Because Brown filed this grievance *after* he initiated this action, this grievance cannot serve to exhaust any of Brown's claims in this case. *See Johnson*, 340 F.3d at 626–28 ("Under the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court…If exhaustion was not completed at the time of filing, dismissal is mandatory.") (emphasis in original).

[4] Defendants submitted 175 pages of grievances and other requests filed by Brown while he was incarcerated at PCRDF from November 25, 2022, to May 22, 2023. (Doc. 31-1). Even though other grievances reference Brown's surgery (3033000, 30475729, 30550838, 30560700), those grievances relate to kiosk access and/or Brown's lower-level bunk prescription. (Doc. 31-1 at 25, 27, 31–32). Additionally, in Grievance 30492048, Brown grieved the lack of access to medical "for days at a time," but this grievance is far too vague to exhaust any claim in this lawsuit. *Id.* at 28. In Grievance 30677820, Brown mentions Dr. Tilley, and in Grievance 30677912, Brown mentions his hernia, but in both grievances, Brown appears to only grieve about the actions of "Officer Harris." *Id.* at 35–36. Again, these grievances do not appear to grieve any claims in this case. In Grievance 30820163, Brown grieved "being denied medical care [and] put on restriction for trying to get help[.]" *Id.* at 54. In the same grievance, Brown mentions filing 1983 forms. *Id.* Again, this grievance is far too vague to exhaust any claims at issue in this lawsuit. In Grievance 30857841, Brown mentions his surgery, but in the grievance itself, Brown says he is filing the grievance because he has been put on restriction for trying to get help. *Id.* at 65. In sum, *none* of the above-mentioned grievances serve to exhaust the claims at issue in this case.

*Id.* at 12. On December 13, 2022, Bertha Lowe ("Lowe"), Turn Key's Health Services Administrator, responded: "You do not currently have an order for surgery." *Id; see also* Doc. 32 at 2 ¶ 10 (identifying Bertha Lowe as Turn Key's Health Service Administrator). Brown did not appeal this response. *Id.*

In Grievance 30293518, filed on December 18, 2022, Brown grieved about his hernia, saying that he had "seen medical and the doc said [I] needed double hernia surgery and its just getting worse." *Id.* at 16. On December 20, 2022, Michael Hagerty responded: "You will have to place a sick call to have your issue addressed by medical." *Id.* Again, Brown did not appeal this response*. Id.*

In Grievance 30322375, filed on December 20, 2022, Brown grieved that he never refused sick call, and "[I] do need to see a doctor this hernia is getting worse." *Id.* at 17. On December 28, 2022, Lowe responded that, according to Brown's sick call response, "[t]his issue was already addressed prior to x-ray." *Id.* Again, Brown did not appeal this response. *Id.*

In Grievance 31058162, filed on March 3, 2023, Brown grieved the following:

> I was sent to uams on february 5th [I] was scheduled for consultation for [] hernia surgery the following week [I] have not been taken [I] am in [constant] pain [I]'ve seen medical multiple times all they tell me is that [I] am scheduled and give me ibu[profen] are you waiting for me to die [I] am in constant pain [a]nd sick every day.

*Id.* at 101. On March 7, 2023, Lowe responded: "You don't have an order from the provider for a consultation. Once the order is received[,] we will have to get an approval from the USMS." *Id.* Brown did not appeal this response. *Id.*

In Grievance 31099428, filed on March 7, 2023, Brown grieved the following: "[A]gain this morning my hernia made me get sick and throw up[.]" *Id.* at 105. On March 9, 2023, Kristin McCann responded: "Will need to put in a sick call." *Id.* Again, Brown did not appeal this response. *Id.*

In Grievance 31262193, filed on March 23, 2023, Brown grieved the following:

> [O]n 1-23-23 I was seen by turn key staff nurse because my hernia was making me sick the nurse looked at it and said I needed to[] go to [the] hospital because it was very swollen and discolored said she would get right back with me after she talked to her boss its the end of the day I asked [O]fficer [L]ewis to call medical he shook h[]is head said he would I was feeling sick so I lai[]d down in the floor he[] let me lay there for at least 30 minutes never did call.

*Id.* at 126. On March 29, 2023, Lowe responded: "I'm not sure whether this is a grievance for Medical or Detention, however the Provider didn't write an order for outside care." *Id.* Again, Brown did not appeal this response. *Id.* [5]

Brown fails to explain why he did not appeal any of the grievance responses mentioned above, and he does not claim that PCRDF's grievance procedure was unavailable to him. In fact, Brown appealed other unsatisfactory grievance responses during the same time period. (*See*, *e.g.*, Doc. 31-1 at 100). Simply put, Brown was required

---

[5] In "Court Liaison" Request 31615104, filed on April 29, 2023, Brown reported the following:

> [I] have been waiting on a hernia surgery since 10 of 22 [I] was scheduled for consultation on 10/12/22 the day I was in court a[]nd detained my condition is[] only getting worse [I]'ve seen medical here almost every week was transported to hospital on 02/05/23 and was scheduled for surgery the[] following week and was [not] taken [I] need help please.

*Id.* at 151. On May 3, 2023, Mary Green responded: "[R]equest through medical." *Id.* Again, even if this were a grievance—and it is not—Brown did not appeal this response to his "Court Liaison" request. *Id.*

9

to appeal responses to his grievances that he did not agree with and proceed through *all levels* of the appeal process before filing this lawsuit. Brown did not do so. Brown's Complaint should be dismissed, without prejudice, for failure to exhaust administrative remedies.

### III. CONCLUSION

After reviewing the record in its entirety, the Court finds that Brown did not appeal any grievance arguably related to his deliberate-indifference claims per PCRDF policy. Therefore, Brown did not exhaust his claims before filing this lawsuit, as required by the PLRA. Accordingly, Defendants' Joint Motion for Summary Judgment should be granted.

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' Joint Motion for Summary Judgment (Doc. 31) be GRANTED.

2. Brown's Complaint (Doc. 2) be DISMISSED, without prejudice, for failure to exhaust available administrative remedies.

DATED this 12th day of June, 2024.

_____
UNITED STATES MAGISTRATE JUDGE